UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UMB BANK, N.A.                                                                                                   Plaintiff

v.                                                                                     Civil Action No. 3:23-cv-575-RGJ

JB FORUM LAND, LLC, *et al.*                                                                                  Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendants JB Forum Land, LLC ("JB Forum"), AT Forum Louisville Ky II, LLC ("AT Forum"), and Jonathan M. Larmore ("Larmore") move to dismiss under Federal Rule of Civil Procedure 12(b)(6). [DE 15]. Plaintiff, UMB Bank, N.A. ("UMB"), responded and the time for JB Forum, AT Forum, and Larmore to reply has passed. [DE 25]; LR 7.1(c) ("A party may file a reply within 14 days of service of the response"). Additionally, First Guaranty Bank ("FGB"), moves to dismiss and alternatively moves to stay, under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(7). [DE 13; DE 13-4]. The motion seeks dismissal of all claims against FGB and AT Forum. [DE 13-4 at 143]. UMB responded and FGB replied. [DE 24; DE 26]. Accordingly, these motions are ripe. For the reasons below, JB Forum, AT Forum, and Larmore's motion to dismiss is **DENIED** and FGB's motion to dismiss is **GRANTED**.

**I.      Background**

UMB initiated this action in Jefferson County Circuit Court, alleging that JB Forum defaulted when it "acquiesc[ed]" to the appointment of a receiver over property subject to a mortgage held by UMB. [DE 13-4 at 144–45]. UMB also alleges that this default accelerated the loan, causing the entire outstanding note to be due. [DE 15-1 at 160]. UMB seeks "(i) a foreclosure of its Fee Mortgage, (ii) termination of the Ground Lease, and (iii) a judicial sale of the Property

1

encumbered by the Fee Mortgage." [DE 1-1 at 17]. With the consent of all defendants, Larmore removed the case to this Court. [DE 13-4 at 145].

UMB holds a promissory note under which JB Forum agreed to a principal of $9,412,895.68 together with a fee mortgage as collateral for that loan. [DE 24 at 217–18]. UMB's fee mortgage is held against real property consisting of two tracts of land in Jefferson County, Kentucky. [*Id.* at 218; DE 1-1 at 20]. UMB also holds a lease assignment as collateral for the promissory note with JB Forum. [DE 24 at 218]. The lease assignment gives UMB the right to take possession of and collect rents derived from the same property subject to the fee mortgage in the event of default. [*Id.*]. UMB completed a UCC-1 financing statement and UCC-1 fixture filing for its security interest in JB Forum's personal property and fixtures. [*Id.*].

FGB holds a promissory note under which AT Forum agreed to a principal of $13,250,000.00 together with a leasehold mortgage as collateral for that loan. [DE 13-4 at 143]. FGB's leasehold mortgage gives it "all of AT Forum's right, title, and interest" from a lease between AT Forum and JB Forum in the event of default. [*Id.* at 144]. The real property subject to this lease is two tracts of land in Jefferson County, Kentucky—the same property subject to the fee mortgage executed between UMB and JB Forum. [*Id.*]. When AT Forum defaulted on its loan with FGB, FGB brought suit in the United States District Court for the Western District of Louisiana. [*Id.*]. That court appointed a receiver, Trigild, Inc. ("Trigild"), on May 24, 2023, and FGB subsequently provided notice to this Court on June 2, 2023. [*Id.*].

Later, the United States Securities and Exchange Commission ("SEC") "sought to place AT Forum and JB Forum into a broad corporate receivership and to stay the instant action" in November 2023 in the United States District Court for the District of Arizona. [DE 24 at 219–20]. That court entered an order appointing a temporary receiver, temporarily freezing assets, and

imposing a litigation injunction on December 21, 2023. [*Id.* at 220]. However, the order designated the action in the Western District of Louisiana and this action in the Western District of Kentucky as "Excluded Actions" in its "Schedule to Stipulation." [DE 24-1 at 270, 272].

## II. JB Forum, AT Forum, and Larmore's Motion to Dismiss

JB Forum, AT Forum, and Larmore (collectively, "Defendants") move for dismissal under Rule 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claim[s]

made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### A. JB Forum's Default

Defendants argue that UMB provides no facts to show JB Forum "actually agreed or acquiesced to the appointment of a receiver in the Louisiana case" or otherwise defaulted on its loan with UMB. [DE 15-1 at 162]. UMB responds that JB Forum's agreement or acquiescence to a receivership in the Louisiana case amounted to a default under Section 5.1(j)(iv) of the "Fee Mortgage." [DE 25 at 360–61].

Section 5.1 of the agreement between UMB and JB Forum reads:

*Section 5.1. Events of Default*. Any one or more of the following shall constitute an Event of Default as the term is used herein:

. . .

(j) The Company: (i) admits in writing its inability to pay its debts generally as they become due; (ii) files a petition in bankruptcy or a petition to take advantage of any insolvency act; (iii) makes an assignment for the benefit of creditors generally; (iv) *consents to, or acquiesces in, the appointment of a receiver, liquidator or trustee of itself or of the whole or any substantial part of its properties or assets*; (v) files a petition or answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the federal bankruptcy laws or any other comparable federal or state statute or law; (vi) has a court of competent jurisdiction enter an order, judgment or decree appointing a receiver, liquidator or trustee of the Company, or of the whole or any substantial part of the property or assets of the Company; (vii) has a petition filed against it seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the federal bankruptcy laws or any other comparable federal or state statute or law and such petition shall remain undismissed for ninety (90) days; (viii) under the provisions of any other law for the relief or aid of debtors, has any court of competent jurisdiction assume custody or control of the Company or of the whole or any substantial part of its property or assets; (ix) has an attachment or execution levied against any substantial portion of any property of the Company which is not discharged or dissolved by a bond within thirty (30) days; or (x) ceases to exist, is liquidated, or is dissolved[.]

[DE 25-2 at 469 (emphasis added)]. UMB points to Section 5.1(j)(iv), arguing that JB Forum's lease with AT Forum was one of the assets covered by the language "over the whole or any substantial part of its properties or assets." [DE 25 at 363]. Because the Western District of Louisiana has taken control of the "rents arising from" that lease and JB Forum did not intervene or object, UMB argues, JB Forum effectively acquiesced to the receivership and therefore defaulted under the agreement. [DE 25 at 363–34].

The term "consent" implies that JB Forum would have had to take an affirmative step agreeing to the receivership to constitute a default and, as Defendants point out, UMB does not put forth any communications or documentation showing JB Forum assented to the receivership. [DE 15 at 164]. On the other hand, "acquiesce" is more passive, implying that JB Forum had a duty under the contract to object to its property entering the control of the receivership. *See Burnrite Coal Briquette Co. v. Riggs*, 274 U.S. 208, 213 (1927) (holding that even a party that objects to a receivership's jurisdiction on "untenable grounds" has "acquiesced" because it is just as misleading as "not object[ing] at all"); *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) (equating "acquiesce[ence] in" a receivership to "fail[ure] to object to" a receivership); *Stooksbury v. Ross*, No. 3:09-CV-498-TAV-HBG, 2015 WL 11170832, at \*1 (E.D. Tenn. Dec. 23, 2015), *report and recommendation adopted*, No. 3:09-CV-498-TAV-HBG, 2016 WL 158533 (E.D. Tenn. Jan. 13, 2016) (explaining "[t]he Court may treat this lack of timely opposition as acquiescence to the relief sought" when "no party or interested third party has filed a timely objection" to a receiver's final report). By alleging that JB Forum did nothing to object to the receivership, UMB has alleged that JB Forum acquiesced to it and therefore stated a plausible claim that it defaulted under the contract. As a result, the Court does not have to "rewrite the Agreement to confer a right that the drafter did not intend to grant," *Tangas v. Int'l House of Pancakes LLC*, 779 F. App'x 317,

5

327 (6th Cir. 2019), but finds the contract's terms are clear enough that UMB "states[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### B. UMB's Claims Against AT Forum and Larmore

Defendants also argue that UMB has no cognizable claim against AT Forum or Larmore because (1) neither AT Forum nor Larmore was a party to UMB and JB Forum's loan agreement and (2) UMB only alleges Larmore "may have an interest in the property." [DE 15-1 at 166]. Because neither AT Forum nor Larmore is a party to the loan between UMB and JB Forum, neither could have breached that agreement. [*Id.*]. UMB responds that it does have a justiciable claim against AT Forum and Larmore because KRS 426.006 requires all lienholders of record with an interest in the property to be named when a lawsuit seeks foreclosure. [DE 25 at 364]; *see* KRS 426.006 ("The plaintiff in an action for enforcing a lien on property shall state in his petition the liens held thereon by others, making them defendants[.]").

As UMB explains, AT Forum is a lienholder of record and Larmore is the "ultimate owner of AT Forum," therefore both were required to be named when UMB sought foreclosure on the property subject to its claims. [DE 25 at 365]. The Court finds that, because UMB was required to name AT Forum and Larmore pursuant to KRS 426.006, dismissal of AT Forum and Larmore under Rule 12(b)(6) is not appropriate. Accordingly, Defendants' motion to dismiss [DE 15] is **DENIED**.

### III. FGB's Motion to Dismiss

FGB moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(7) for failure to join a required party under Rule 19. Although the Court considers Rule 12(b)(1) dispositive of the relief sought against FGB and AT Forum—

the termination of the leasehold via a foreclosure sale—it also considers Rule 12(b)(7) to determine whether FGB and AT Forum may be dismissed from the foreclosure action against JB Forum.

### A. The Receivership Court's Exclusive Jurisdiction and Equitable Power

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence[.]" *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007). "Regardless of the type of attack, Plaintiff, as the party invoking federal subject matter jurisdiction, bears the burden of persuading the Court that subject matter jurisdiction exists." *Kobaivanova v. Hansen*, No. 1:11CV943, 2011 WL 4401687, at *2 (N.D. Ohio Sept. 16, 2011) (citing *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005)).

Federal Rule of Civil Procedure 66 requires that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. Because "few laws delineate [a receivership's] scope," the Sixth Circuit detailed that historical practice in a recent case, explaining that the receivership court "obtained *exclusive* jurisdiction over the debtor's res (the property) and sole authority to determine who should possess it." *Digit. Media Sols., LLC v. S. Univ. of Ohio, LLC*, 59 F.4th 772, 778–79 (6th Cir. 2023) (citing *Wabash R.R. Co. v. Adelbert Coll. of W. Rsrv. Univ.*, 208 U.S. 38, 54–55 (1908) and *Field v. Kansas City Refin. Co.*, 296 F. 800, 804 (8th Cir. 1924)) (emphasis in original). That jurisdiction comes with the power to "issue a variety of injunctions to protect its exclusive jurisdiction over the debtor's property" including "enjoin[ing] judgment creditors from executing on the property or seeking to possess it by other means." *Id.* at 780. But

a receivership court "could not enjoin a creditor's suit against the debtor *itself* if the suit sought only an in personam judgment." *Id.* (emphasis in original).

Congress intentionally granted receivership courts complete jurisdiction "over not only the receivers who might or might not reside in [its] district but who might reside in the circuit, but also over the res or property lying within other districts within the circuit as well as [its] own." *Link v. Powell*, 57 F.2d 591, 593 (W.D.S.C. 1932); *see also Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823 (6th Cir. 1981) ("[T]he territorial jurisdiction of the appointing court is extended[.]"). At bottom, "[o]nce assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets" and therefore that district court "may issue a blanket injunction, staying litigation against the named receiver and the entities under [its] control unless leave of that court is first obtained." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *see also Farmers' Loan & Tr. Co. v. Lake S. E. R. Co.*, 177 U.S. 51, 61 (1900) ("The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power.").

FGB argues this case law makes clear that, when it appointed Trigild as receiver and placed the leasehold mortgage between FGB and AT Forum under its control, the Western District of Louisiana obtained exclusive jurisdiction over it. [DE 13-4 at 148–49]. Therefore, according to FGB, this Court lacks jurisdiction over UMB's claims because it would interfere with the property placed in receivership. [*Id.* at 149 ("This Court cannot grant any Property-related relief without divesting the receiver and appointing court of their control and jurisdiction.")]. UMB responds by arguing that two separate mortgages are at issue: a fee mortgage in this case, and a leasehold mortgage in the Louisiana case. [DE 24 at 221 (quoting *Digit. Media*, 95 F.4th at 780 ("If . . . a

8

creditor's conduct did not affect a court's control of the property, the court could not enjoin the conduct. A court thus could not issue an injunction that extended so far as to protect assets outside of the receivership.") (internal quotations omitted))]. Because UMB's fee mortgage "encompasses the land," it contends, "the receiver only has jurisdiction over a leasehold interest, not the fee simple interest being foreclosed in this case." [*Id.* at 222–23]. According to UMB, *Digital Media* precludes the Western District of Louisiana from enjoining its suit in this Court because it cannot "protect assets outside of the receivership." [*Id.* (quoting *Digit. Media*, 95 F.4th at 787)].

The Western District of Louisiana's order subjected "all right, title and interest, including leasehold interests, of the [the defendants]" to the receivership, including "immovable property," "all income derived from such immovable property," and "all movable property." [DE 13-3 at 124–25]. FGB's leasehold mortgage interest in the Jefferson County property was included by this language. [*Id.* at 140]. The order also explicitly stated, "no creditor of the Mortgagor, other than Plaintiff, shall have the right to seize or attempt to seize any of the Property delivered to the Receiver hereunder." [*Id.* at 131]. Although not directly, that is what UMB's complaint seeks to do. As FGB points out, UMB seeks "termination of the Ground Lease" and asks that the property be sold "free and clear of any and all liens." [DE 1-1 at 17, 19]. While UMB's fee mortgage is not itself property subject to the receivership, the relief sought by UMB in this Court pursuant to the fee mortgage would directly interfere with the Western District of Louisiana's exclusive control over the leasehold mortgage between FGB and AT Forum by terminating it.

UMB also argues that *Digital Media* supports their position, rather than FGB's, because it held a "Bar Order" overstepped the receivership court's equitable powers by "protect[ing] not just assets in the [receivership] . . . but also assets that fell wholly outside the receivership[.]" [DE 24 at 224]; *Digit. Media*, 95 F.4th at 787. But the distinction made by *Digital Media* between

9

"insurance proceeds" and "other property possessed by the directors and officers" is different than the distinction UMB seeks to make in this case between its fee mortgage and FGB's leasehold mortgage. *Id.* at 787. First, *Digital Media* framed its central question as: "Did the district court have the power to enter the Bar Order that enjoined the Art Students' claims not just against the *receivership entities* . . . but also against *third parties outside the receivership*. . . ?" 95 F.4th at 777 (emphasis in original). UMB's claim in this case plainly targets a receivership entity. Second, *Digital Media*'s distinction rested on whether a creditor's actions affected control of the property subject to the receivership. *Id.* at 780 ("If, however, a creditor's conduct did not affect a court's control of the property, the court could not enjoin the conduct."). The Sixth Circuit held the Bar Order went too far because it enjoined a suit that subjected a third party to *personal* liability, rather than a judgment related to *property*. *Id.* at 780 ("[A] suit imposing *personal* liability on the debtor would not interfere with the receivership court's control of its *property*.") (emphasis in original) (citing *Riehle v. Margolies*, 279 U.S. 218, 223–24 (1929)). The Art Students in *Digital Media* brought "fraud claims against non-receivership entities," not a property claim that sought to terminate a property interest subject to a receivership, as is the case here. *Id.* at 781.

In this case, UMB's claims (1) directly affect the receivership court's control of the property and (2) are property-based claims rather than personal liability claims. As a result, the "ownership" of the claim is not separate as it was between the Dream Center and the Art Students in *Digital Media*. *Id.* at 782 ("The real question in this case thus concerns who 'owns' the claims[.]"), 784 ("[T]he Art Students' injuries (reduced job prospects, among other harms) have little in common with Dream Center's injury (its insolvency)."), 785 ("All told, the Art Students seek to recover on individual claims for personal injuries. These claims belong to them[.]"). Instead, FGB's and UMB's property interests are intertwined. The Sixth Circuit noted that the

10

receivership in *Digital Media did* have the power to "issue a narrow injunction prohibiting the directors and officers . . . from paying their defense costs out of Dream Center's insurance proceeds," but "enjoining all personal-liability claims against Dream Center's directors and officers" went too far. *Id.* at 786. In other words, "[a]n in personam judgment against defendants [that] would determine only their 'personal liability' to a plaintiff and would not 'involve possession or control' of the debtor's property" could not be enjoined by a receivership court. *Id.* at 787 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922)). UMB's complaint does not fall in that category, but directly impacts property under the receivership court's exclusive control. As a result, because UMB's complaint effectively seeks adjudication of "debtor assets that its creditors could execute upon" that are subject to the receivership court order—which are property interests, rather than personal liability claims—this Court cannot exercise subject matter jurisdiction over its claims. *Id.* at 787. FGB's motion to dismiss is **GRANTED**.

### B. Rule 12(b)(7) Warrants Dismissal of the Foreclosure Action

Because the relief requested by UMB would interfere with the Western District of Louisiana's exclusive jurisdiction over the leasehold mortgage executed between FGB and AT Forum, this Court cannot exercise jurisdiction over all of UMB's claims. Instead, it must heed the Western District of Louisiana's "property-protective injunction" and dismiss the portions of the complaint affecting property subject to the receivership, under Rule 12(b)(1). *Id.* at 786. But another issue remains. *Digital Media* makes clear that the Court cannot exercise jurisdiction over claims affecting property subject to the receivership—FGB and AT Forum's leasehold mortgage. That said, FGB does not oppose UMB's foreclosure action, merely the termination of its "rights in the leasehold." [DE 26 at 649]. In other words, FGB asserts only that the Court has no

11

jurisdiction to terminate the leasehold and order a foreclosure *sale* but concedes that the Court does have jurisdiction to oversee the initial foreclosure action against JB Forum.

It is true that courts draw a distinction between the legal consequences of a foreclosure and a foreclosure sale, and foreclosure alone would not extinguish the leasehold or immediately interfere with the property subject to the receivership. *See McEwan v. EiA Properties, LLC*, 428 S.W.3d 633, 636 (Ky. Ct. App. 2014) ("[A]ny interest she may have acquired under the lease was legally extinguished by the foreclosure *sale*.") (emphasis added); *In re Smith*, 510 B.R. 164, 172 (Bankr. S.D. Ohio 2014) (citing *Barnes v. Cady*, 232 F. 318, 319 (6th Cir. 1916) for the proposition that "the lack of a foreclosure sale meant that the junior mortgage was not extinguished."). But if the foreclosure action were to proceed, the Court could not dismiss FGB and AT Forum as parties to the lawsuit pursuant to Rule 12(b)(1)—as FGB requests—because the complaint pleads that both have an interest in the property subject to foreclosure, and so Kentucky law *requires* that they be named parties in the action.

> The plaintiff in an action for enforcing a lien on property *shall state in his petition the liens held thereon by others, making them defendants*; and may ask for and obtain a judgment for a sale of the property to satisfy all of said liens which are shown to exist, though the defendants fail to assert their claims. *Such defendants shall not, however, be allowed to withdraw or receive any of the proceeds of such sale, until they have shown their right thereto by answer and cross claim*, which shall be asserted as provided in the Rules of Civil Procedure.

KRS 426.006 (emphasis added). However, even if FGB and AT Forum cannot be dismissed from the action under Rule 12(b)(1) alone because they are still required parties to the foreclosure action under KRS 426.006, the Court may still be required to dismiss the entire complaint under Rule 12(b)(7). Therefore, the Court also considers FGB's Rule 12(b)(7) motion.

To evaluate that motion, the Court must consider: (1) whether a party is necessary under Rule 19(a), (2) whether that party's joinder destroys subject matter jurisdiction, and (3), if the party

cannot be joined, whether the court should "'in equity and good conscience' dismiss the case because the absentee is indispensable." *Carter v. Deutsche Bank Nat'l Tr. Co.*, 2017 U.S. App. LEXIS 21398, at *5–6 (quoting *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993) and *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004)). FGB argues that Trigild is "an indispensable party who cannot be joined." [DE 13-4 at 149]. UMB responds that Trigild is not a necessary party because the "Leasehold Mortgage and the Fee Mortgage represent separate and distinct interests," so the motion fails at step one. [DE 24 at 226].

Turning first to step one, the Court finds that not only would KRS 426.006 require FGB and AT Forum to be named as defendants in the foreclosure action, but it would also require Trigild to be a defendant. The same is true under Rule 19, which defines "required party."

> (1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Trigild has an interest relating to the foreclosure, and its absence would "as a practical matter impair or impede" its "ability to protect the interest" and would lead to "a substantial risk of incurring . . . inconsistent obligations." And in fact, the precise effect of KRS 426.006 is to ensure "complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). UMB disagrees, citing *Sudamax Industria E Comercio De Cigarros v. Butts & Ashes, Inc.*, 2005 WL

13

2206066, at *3 (W.D.K.Y. September 9, 2005) for the proposition that, because Trigild was not a party to the "Fee mortgage," "the Court can absolutely accord complete relief among the existing parties[.]" [DE 24 at 226]. *Sudamax* does not apply because that case dealt with a business contract where one party sought to "enforce contract provisions under the Uniform Commercial Code . . . for back payments and placement of proceeds into a mandated escrow account . . . [and] to prevent [defendant] from selling cigarettes that may be confused" with the plaintiff's brand. 2005 WL 2206066, at *1. That is different from the facts of this case, where the foreclosure action—specifically sought for the purpose of a foreclosure sale in this lawsuit—involves property directly tied to FGB's leasehold mortgage with AT Forum.[1] Therefore, the Court considers Trigild a required party under both KRS 426.006 and Rule 19(a).

Given that Trigild is a required party, the Court turns to step two: whether its joinder is feasible. FGB argues that Trigild cannot be joined because it "share[s] the appointing judge's absolute immunity" from suit as an "arm[] of the court[.]" [DE 13-4 at 151]; *Davis v. Bayless, Bayless & Stokes*, 70 F.3d 367, 373 (5th Cir. 1995); *see also Plassman v. City of Wauseon*, No. 95-3736, 1996 U.S. App. LEXIS 14496, at *20 (6th Cir. May 14, 1996) (holding a receiver is entitled to immunity if it does "not act outside of [its] authority under court order or maliciously or corruptly"). Because there is no evidence that Trigild behaved "maliciously or corruptly" before the Court, Trigild's joinder is not feasible because it enjoys immunity from suit as receiver. *See*, *e.g.*, *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 304–05 (6th Cir. 2009) (McKeague, J., concurring) (explaining that "[a]s a sovereign, a State cannot be required by

---

[1] Indeed, as FGB points out in its reply, if the leasehold were completely unrelated to this case, FGB and AT Forum would have no reason to be named defendants in the first place. [DE 26 at 649]. But of course, UMB did name them because, as it describes in the "Foreclosure and Sale of the Property" section of its complaint, these parties have an "interest in the Property by virtue of [FGB's] Ground Lease Mortgage" and "by virtue of [AT Forum's] status as tenant under the Ground Lease[.]" [DE 1-1 at 17].

14

a federal court to join a lawsuit as a party" because it has immunity under the Eleventh Amendment, so "the court cannot require that they join, [and] the States' compulsory joinder under Rule 19 is not feasible").

Finally, the Court turns to step three: whether the action should proceed or be dismissed. When joinder of a required party is not feasible, Rule 19(b) provides:

> (b) WHEN JOINDER IS NOT FEASIBLE. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
>> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>>
>> (2) the extent to which any prejudice could be lessened or avoided by:
>>
>>> (A) protective provisions in the judgment;
>>>
>>> (B) shaping the relief; or
>>>
>>> (C) other measures;
>>
>> (3) whether a judgment rendered in the person's absence would be adequate; and
>>
>> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Applying these factors, the action cannot proceed among the existing parties "in equity and good conscience," and so the complaint should be dismissed. Trigild has exclusive control over the leasehold mortgage between FGB and AT Forum, so it is difficult to imagine how continuing without it would not prejudice its interest in the foreclosure which UMB ultimately seeks to extinguish the leasehold via a court-ordered foreclosure sale. Because Trigild has exclusive control over the leasehold mortgage, the Court cannot easily lessen that prejudice via the methods enumerated in Rule 19(b)(2). A judgment rendered in Trigild's absence would not be

adequate because, as FGB argues, it could "prejudice its interest and control of the Property and potentially impose multiple, inconsistent obligations." [DE 13-4 at 151]. And if the action is dismissed under 12(b)(7), that does not leave UMB without recourse. While this Court cannot hear its claims, "having barred creditors from obtaining the debtor's property through the ordinary means, the [receivership] court [must] allow them to present their claims to the receiver or to intervene in the receivership case." *Digit. Media*, 95 F.4th at 780 (citing *Alexander v. Hillman*, 296 U.S. 222, 239–43 (1935)); *see also Lebsock 7, LLLP v. Bank of Colo.*, 2023 U.S. Dist. LEXIS 170707, at *23–24 (explaining "claims relating to the receivership should be asserted in the receivership proceedings" and "the remedy is to seek relief through the [court] that appointed the Receiver" when joinder is not feasible because the receiver is "entitled to absolute immunity").

For all of these reasons, the Court finds that Trigild is an indispensable party that cannot be joined under Rule 19(b). As a result, even though FGB does not directly challenge the foreclosure under UMB's fee mortgage with JB Forum—an action in which KRS 426.006 would require both FGB and AT Forum to be named parties—the Court must still dismiss the complaint in its entirety under Rule 12(b)(7).

## IV. Conclusion

For the reasons stated above, and the Court being otherwise sufficiently advised, JB Forum, AT Forum, and Larmore's motion to dismiss [DE 15] is **DENIED** and FGB's motion to dismiss [DE 13] is **GRANTED**.  Accordingly, the Court **ORDERS** that:

1. UMB's complaint is **DISMISSED** in its entirety.

2. The Court will enter a separate Judgment.

March 5, 2024

Rebecca Grady Jennings, District Judge
United States District Court

cc: counsel of record